In the Matter of JOHNSON ELECTRICAL CORPORATION, Debtor.

UNITED STATES of America, Appellant,

v.

JOHNSON ELECTRICAL CORPORATION, Debtor-Appellee.

No. 683, Docket 35029.

United States Court of Appeals, Second Circuit.

Argued March 30, 1971.

Decided May 4, 1971.

282

Susan Freiman, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, and Alan B. Morrison, Asst. U. S. Atty., of counsel), for appellant.

Elias Mann (Levin & Weintraub, New York City, of counsel), for debtor-appellee.

Before LUMBARD, Chief Judge, FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

The United States filed a tax claim of $17,048.82 in the proceeding of Johnson Electrical Corporation in the District Court for the Southern District of New York,. begun on March 17, 1967, for an arrangement under Chapter XI of the Bankruptcy Act. Under § 17 of the Act such a claim is not dischargeable. It was paid in full, without post-petition interest, on December 24, 1968, about a month after confirmation of the arrangement. In April 1969, when the Internal Revenue Service took preliminary steps looking toward collection of the interest, $1,512.59, that had accrued after the filing of the Chapter XI petition, Johnson caused the proceeding to be reopened and sought and obtained an order from the referee, later confirmed by the district court, 312 F.Supp. 840, enjoining the United States from taking any action to assess and collect such interest.

The Government appeals, both on "jurisdictional" grounds and on the merits. Although the Government took "no position" below with respect to the first issue, suggesting only that the court "may be without jurisdiction to restrain the United States from collecting interest," it now vigorously presses the point. In addition to reliance on the familiar anti-injunction provision of the Internal Revenue Code, 26 U.S.C. § 7421, it asserts correctly enough, that the order does not concern any assets still under administration and argues that, in contrast to a case such as Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (bankruptcy court may enjoin state court suit against discharged bankrupt despite statute, then § 265 of the Judicial Code, prohibiting stays of state court proceedings "except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy"), the bankruptcy court had not—indeed could not have—issued an order of discharge with respect to the tax claim, which the injunction was needed to protect. With respect to the merits, while conceding that this court's opinion in National Foundry Co. of New York, Inc. v. Director of Internal Revenue, 229 F.2d 149 (2 Cir. 1956), is directly against it, the Government contends that *National Foundry* has been destroyed by Bruning v. United States, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). Although our impression concerning the Government's argument on the first issue is negative since the bankruptcy court was presented with an application colorably within its powers, we find it unnecessary to rule on this since we agree with the Government on the merits.[1]

1. Of course, we could not properly take such an approach if the result might in any way be affected by the jurisdictional determination. However, since we decide only that the post-petition interest is collectible by the United States, which it would also be if we were to decide that the bankruptcy court had no jurisdiction to enjoin such collection or that it had such jurisdiction but erroneously exercised it, we reach a result which is consistent with either view of the jurisdictional issue. Moreover, in light of our conclusions, the Government's interests are better served by our sustaining its argument on the merits than they would be by our upholding its jurisdictional objections if we were so advised. So also are the in-

The Supreme Court granted certiorari in *Bruning* to resolve a conflict between the Ninth Circuit's decision, 317 F.2d 229 (1963), sustaining the collection of post-petition interest from a discharged bankrupt, and the contrary view of the Tenth Circuit in United States v. Mighell, 273 F.2d 682 (1959). The Tenth Circuit had relied in part on our decision in *National Foundry, supra.*[2] The Ninth Circuit had said:

> Some of the cases denying relief for the extra interest out of the estate do speak of compassion for the debtor or of what will restore the debtor's economic health. For example, see National Foundry Company of New York v. Director of Internal Revenue, 2 Cir., 229 F.2d 149. But if paying interest on one's taxes after discharge is inimical to an ex-bankrupt's health, so is the payment of any balance of principal.

> Section 17, sub. a is not a compassionate section for debtors. Congress, speaking for society, has decided that the problems of others: the government, the abandoned-dependent wife, the defrauded widow, override the value of giving the debtor a wholly new start in life.

After quoting 26 U.S.C. § 6873(a),[3] the Supreme Court sustained the reasoning of the Ninth Circuit, stating, 376 U.S. at 361, 84 S.Ct. at 908:

> We find no indication in the wording or history of § 6873(a) that the section was meant to limit the Government's

right to continuing interest on an undischarged and unpaid tax liability. Nor is petitioner aided by the now-familiar principle that one main purpose of the Bankruptcy Act is to let the honest debtor begin his financial life anew. As the Court of Appeals noted, § 17 is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems—*e. g.*, those of financing government—override the value of giving the debtor a wholly fresh start. Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy. The general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts. (Footnote omitted.)

The only basis suggested for disregarding *Bruning* is that here the entire tax, apparently including pre-petition interest, was paid as a result of the Chapter XI proceeding, whereas in *Bruning* only a partial payment had been made. In re Vaughan, 292 F.Supp. 731 (E.D. Ky.1968), also sought to diminish the effect of *Bruning* in this manner, pointing out that scrutiny of the record in that case revealed that a dispute over post-petition interest on the part of the tax claim that was paid in the bankruptcy proceeding had been settled and the appeal involved (and thus determined) only the question of the bankrupt's liability for post-petition interest on the tax that had been left unpaid. Contra Hugh H.

---

terests of Johnson which would otherwise have to pay the interest and go through a futile refund suit.

2. Although the Tenth Circuit's citation of the *National Foundry* case appears in the section of the opinion dealing with the propriety of granting injunctive relief, rather than that dealing with the merits, the petitioner in *Bruning*, which involved no issue of injunctive relief, had relied

on *National Foundry* in his brief before the Supreme Court. 11 L.Ed.2d 1184.

3. General rule.—Any portion of a claim for taxes allowed in a receivership proceeding or any proceeding under the Bankruptcy Act which is unpaid shall be paid by the taxpayer upon notice and demand from the Secretary or his delegate after the termination of such proceeding.

Eby Co. v. United States, 319 F.Supp. 942, 943–944 (E.D.Pa.1970). This distinction is not sufficiently substantial to warrant a different result. Either the filing of the petition stops the running of interest on federal tax claims against a bankrupt or it does not. In holding the latter, *Bruning* made clear that the reasons generally causing disallowance of claims for such interest against the bankrupt estate, to wit, "the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience," 376 U.S. at 362, 84 S.Ct. at 909, were inapplicable when a non-dischargeable federal tax claim was asserted against the bankrupt himself. Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), relied on by the district court, dealt with the quite different question of allowance of post-petition interest against the bankrupt estate. Far from indirectly undercutting *Bruning*, the Court was at pains to point out, 384 U.S. at 682 n. 9, 86 S.Ct. at 1678–1679, that "[i]t is clear that the interest-bearing quality of the debt is suspended, rather than extinguished, by the filing of a petition in bankruptcy" and that in some circumstances, citing *Bruning*, "the accrual of interest may continue during the period of bankruptcy administration." To be sure, it can be argued that it is unfair to charge a bankrupt with interest during a period when his funds are *in custodia legis*. But often, perhaps even usually, the money is being used by the debtor in possession or the trustee for a useful business purpose and there is thus no real hardship in the bankrupt's having to pay interest on a claim not subject to discharge. In any event the words of 26 U.S.C. § 6873 (a) and § 17 of the Bankruptcy Act are too strict to leave room for judicial loosening in the service of a policy that at best is doubtful.

The order of the district court is reversed, with instructions to direct the referee to enter an order dismissing Johnson Electrical Corporation's petition on the merits.